ELIJAH C. PIERSON AND EDWARD GRUET v. VAN BUREN
RYERSON.

1. A mortgagor, in 1829, conveyed a part of the mortgaged premises to C. The mortgagee, on the same day, released this part to C, and on the next day assigned the mortgage to D. On a bill filed by D, in 1844, a decree was made for the sale of all the land described in the mortgage. C was made a party defendant with the mortgagor, but did not appear, knowing that D had notice of the release. At the sheriff's sale all the land described in the mortgage was set up and struck off to D, and the sheriff, in pursuance of an arrangement between D and E, made the deed to E. E brought ejectment against C for the part so conveyed and released to him. On a bill filed by C against E, stating these facts, and that D, when he took the assignment of the mortgage, had notice of the release, and that E, before he took the sheriff's deed, had notice of the release, a preliminary injunction was granted restraining E from prosecuting the ejectment.

2. A denial on information and belief of notice to another is not sufficient to dissolve an injunction.

3. The denial of two allegations conjunctively is not a denial of each.

4. A release of a part of mortgaged premises had been recorded. An allegation of the defendant that he never heard of the release till after he bought, *held*, under the circumstances, not to be a sufficient denial of knowledge of the release.

_____

The bill states that on the 28th of May, 1828, Richeson Buckbee mortgaged to Aaron Peck the tract of land first described in the bill, to secure $1700. That on the 28th of April, 1829, Buckbee, with his wife, conveyed a part of the said tract (describing the part,) to the complainant Pierson. That on the same day, Peck, with the knowledge and consent of Buckbee, released from the lien of the mortgage the part so conveyed by Buckbee and wife to Pierson. That on the 29th of April, 1829, and after the making of the release, Peck transferred the mortgage to Charles R. Akers, with full notice to him of the said release. That the conveyance by Buckbee and wife to Pierson, and the release from Peck to Pierson, were recorded April 30th, 1829. That the part conveyed by Buckbee and wife to Pierson was conveyed to Pierson in trust for Peck, though the deed was absolute in terms, the consideration of the conveyance to Pier-

son having been paid by Peck; and that Pierson never paid or assumed to pay any consideration for the said release. That Peck, having such interest in the part released, and supposing he had a right to convey it, did, by deeds executed by him and his wife, convey the part so released, in divers parcels, to divers persons, in the year 1829. That under said conveyances and divers mesne conveyances subsequent thereto, the complainant Pierson, on the 4th of February, 1835, became and is now seized in fee, in his own right, of a part of the released premises, (describing the part,) and the complainant Gruet, on the 22d of July, 1843, became and is now seized in fee, in his own right, of another part of the released premises, (describing the part.) That in order to remove any doubt or embarrassment as to the title of Gruet, and to carry out the intention of Peck, Pierson, at the request of Gruet, and with the concurrence of Peck, on the 13th of June, 1845, executed and delivered to Gruet a deed, of that date, conveying to him the part of the released premises which had been conveyed to him as aforesaid. That on the 28th of April, 1829, after the conveyance and release aforesaid, Buckbee and his wife, further to secure the moneys mentioned in the said mortgage, made and delivered to Peck another mortgage of another lot of one acre and forty-eight hundredths. That on the 8th of November, 1830, Buckbee and wife made and delivered to Pierson a mortgage of a tract of three acres, to secure the payment of $750, with interest, on a note given by Buckbee to Pierson; this last tract embracing the lot described in the last-mentioned mortgage from Buckbee and wife and a part of so much of the tract first described in the bill as lies west of Mechanic street in Orange. That on the 8th of April, Pierson assigned to Akers the mortgage and note so made by Buckbee to him. That after the said conveyance and release to Pierson, and immediately thereupon, Pierson, with the concurrence of Peck, laid out and dedicated to public use as a street, a strip of land, part of said released premises, extending the whole depth thereof from the road leading through Orange to Newark, and occupying the westerly side of said released premises, in width fifty feet; and that Peck thereupon conveyed the lot of which Gruet is so seized, as binding on the said street called Mechanic street, so laid

out as aforesaid; which street has been enjoyed by the public from about April 28th, 1829, to this time, without interruption or dispute, though it has never been regularly laid out according to law by surveyors of the highways. That Ryerson, the defendant, threatens and intends to take possession of the said strip so dedicated for a street, or to convey it or bring ejectment for it, so as to deprive the complainants of their rights therein and of the use thereof. That on the 3d of January, 1844, Akers filed his bill to foreclose the said mortgage; that before doing so, he repeatedly stated to Peck and the complainants, or some of them, that he had no claim upon or interest in the land so conveyed and released to Pierson, and that it was fully released from the mortgage. That Akers' said bill, through inadvertence or otherwise, omitted to state or admit the said release. That Pierson was made a defendant in said suit, but Gruet was not. That Pierson, knowing of the release and that Akers had knowledge of it and notice of it as aforesaid, and having confidence that Akers would not ask a decree for the sale of the part so released, and being a proper party defendant in the foreclosure suit for reasons other than his interest in the said released part, did not appear to the said suit. That a decree *pro confesso* was taken for the sale of all the lands originally embraced in the said mortgage from Buckee and wife to Peck. That the sheriff of Essex, by virtue of an execution issued on said decree, advertised all the said lands, and on or about the 1st of August, 1844, struck off the same to Buckbee. That Buckbee, being subsequently advised that the taking a deed to him under that decree and sale would not defeat the rights of the complainants in this bill in the parts released, inasmuch as he had conveyed that part to Pierson as aforesaid, an arrangement was made, or it so transpired, that the lands were again advertised by the sheriff under the said execution, and on or about the 23d of December, 1844, were again sold, and at this sale were struck off to Akers. That afterwards, on or about the 10th of January, 1845, in pursuance of some arrangement made by and between Akers and the defendant, the sheriff executed and delivered a deed therefor to the defendant, which, though it may bear date the said 10th of January, 1845, was not actually delivered till about the 10th of March,

1845. That immediately on being informed that the decree embraced the part released, and that execution was issued thereon and a sale was advertised, the complainants in this bill, or some person in their behalf, applied to Akers and remonstrated with him against his proceeding to sell the part released; and that thereupon Akers expressly disclaimed any right or interest in the part released, and any intention or expectation of disturbing the complainants in respect to the same, by reason of the said decree and execution, or any sale by virtue thereof. That the complainants, confiding in his said assurances, and in the belief that he would so arrange the sale as not to disturb or disquiet them, took no measures to interrupt or prevent any proceeding of Akers under his said decree and execution. That before the said sheriff's sale to Buckbee, and before the said sheriff's sale to Akers, and before the said conveyance from the sheriff to the defendant, and before any consideration therefor was paid by the defendant, the defendant was informed and well knew of the said release, and of its having been made before Akers acquired his interest in the mortgage; and that before the said sheriff's sale to Akers, the defendant was fully informed by Akers that he, Akers, had no interest in or claim to the part released; that the same had been released; that the decree ought not to have been taken for the sale of that part, and was in that respect erroneous, and that he must take the deed from the sheriff, subject to the rights of the complainants in the part so released. That in the said arrangement between Akers and the defendant, no part of the consideration money for the conveyance to the defendant was computed or allowed upon or as an estimated value of the part released, and that no consideration was paid, or secured to be paid, by the defendant therefor. That before the sheriff's deed to the defendant was delivered as such to him, the complainants, or some person in their behalf, notified him of the said release, and that the said decree and execution were erroneous in directing a sale thereof. That Ryerson, the defendant, had brought ejectments against the complainants, Pierson and Gruet, to recover possession of the parts they respectively hold of the said released premises.

The prayer of the bill is that the defendant be perpetually enjoined from prosecuting the said ejectments, and from com-

mencing any other proceedings at law for the recovery of the possession of the part released, and from conveying the same.

A preliminary injunction was granted.

Ryerson put in an answer to the bill, in which, among other things not necessary to be stated, he says that, answering from the best of his knowledge, information and belief, but not admitting its due execution or acknowledgment, he admits the release, and that it was recorded as stated in the bill; and says that he can answer as to the knowledge of Akers of the release at the time of the assignment of the mortgage, only from information derived from Akers and others, and that from such information, he believes that Akers was then wholly ignorant of the release; and admits the property was struck off to Akers at the sheriff's sale, and says that Akers bid at his request, and as his agent; and that, on the 10th of January, 1845, he paid $1100 of the purchase money, and the balance, to wit, $1800, on or about January 29th, 1845, at which time the deed was delivered to him by the sheriff; and denies that, at the time he bought at the sheriff's sale as aforesaid, he knew or had any information whatever, that the part alleged to have been conveyed and released to Pierson had been so released; and that Akers had no claim, right, title or interest therein by virtue of his mortgage, but says he made the purchase under the belief that he was buying said lands free and clear of all encumbrances whatever, and without any knowledge of the pretended claims now set up by Pierson and Gruet, and without any knowledge of the encumbrances set forth in the bill, relating to the execution of the said pretended release, and without any such notice or information from Akers as is alleged in the bill; and says that the first time he ever heard of the release mentioned, was on the 8th of March, 1845, after he had paid all the purchase money, and received his deed as aforesaid. He says it may be true, though he has no knowledge of the fact, that after the decree the complainants, or one of them, called on Akers and remonstrated with him, as stated in the bill; and that Akers had no knowledge that the bill of complaint prayed a sale of all the land mentioned in the mortgage. He denies that any arrangement was made between Akers and him respecting the purchase of the said land and premises, except that Akers

should buy at the sale as his agent; and he more particularly denies that any arrangement was made between them by which no part of the consideration of the said conveyance to him was computed or allowed upon or as an estimated value of the tract so released, as stated, or that the same or any part of it was excluded in whole or in part, by any arrangement, from the computation or estimation of such consideration money; and he denies that no consideration money was paid or secured for or on account of the same, but says that the money paid by him was paid and intended to be paid, as much as a consideration for that part as for any other part. He denies that before the conveyance of the sheriff to him, the complainants, or any other person or persons on their or either of their behalf, or in any other way, notified him of the said pretended release, or that by reason thereof the mortgage was no longer a lien on the same, or that the decree and execution were erroneous as directing the sale of the same, or that the complainants held any part of said lands free and clear of the said mortgage; and he alleges he never heard of any such release till after he had paid for the land and received his deed therefor.

On this answer a motion was made to dissolve the injunction

_A. Gifford_ and _B. Williamson,_ in support of the motion. They cited 4 _John. Ch. Rep._ 202; 5 _Ibid._ 69.

_A. C. M. Pennington_ and _A. Whitehead,_ contra. They cited 2 _Vesey_ 19; 1 _Paige's Ch. Rep._ 100; _Dev. Eq._ 429; _Hopkins,_ 148; 5 _John. Chan. Rep._ 247; _Wyatt's Prac. Reg._ 19.

THE CHANCELLOR. The answer is insufficient to dissolve the injunction. So far as the equity of the bill rests on the allegation that Akers, before he took the assignment of the mortgage, had notice of the release, there is no sufficient denial. The answer to this allegation is, that the defendant, from information derived from Akers and others, believes that Akers was then wholly ignorant of the release. A denial on information and belief, of notice to another, is not sufficient to dissolve an injunction.

So far as the equity of the bill rests on the allegation that, before the sale at which the property was struck off to Akers, and before the defendant took the deed, he knew of the release, there is no sufficient denial. The bill further charges that before, &c., the defendant was informed by Akers, that he, Akers, had no interest in or claim to the part released. The defendant, in answer, says that Akers bid at the said sale at his request and as his agent, and denies that at the time he bought at the sheriff's sale, as aforesaid, he knew or had any information whatever, that the part alleged to have been conveyed and released to Pierson had been so released, and that Akers had no claim, right or interest therein by virtue of his mortgage, but says he made the purchase under the belief that he was buying the lands free and clear of all encumbrances, and without any knowledge of the pretended claims now set up by Pierson and Gruet, and without any knowledge of the encumbrances set forth in the bill relating to the execution of the said pretended release, and without any such notice or information from Akers as is alleged in the bill. A denial that he knew of the release *and* that Akers had no right or interest in the part released, is not a denial of knowledge of the release. The defendant may have been of opinion that Akers had a right or interest in the part released, by virtue of the mortgage and the decree thereon, notwithstanding the release. The denial of two allegations conjunctively, is not a denial of each. Again, all this part of the answer relates to the time when he (as he says) bought at the sheriff's sale, as aforesaid. What time is meant here? The time when the property was struck off to Akers, or the time when he took the deed from the sheriff?

The defendant has used two general sentences in his answer by way of denial of knowledge of the release. In one of them he says that the first time he ever *heard* of the release *mentioned,* was on the 8th of March, 1845, after he had paid the purchase money and received his deed. In the other he says he never *heard* of any such release till after he had paid for the land and received his deed therefor. General denials are always unsatisfactory. It is said, " *Dolus latet in generalibus.*"

In this case the release was recorded, and the defendant admits it was recorded as stated in the bill. This may account

DECEMBER TERM, 1845. 203

Morris Canal and B'k'g Co. v. Society for Establishing Useful Manufactures.

for the language used in these general sentences. They do not, under the circumstances, and in view of the failure in the more special answer to this charge, amount to a denial of knowledge of the release.

It would be unsafe for the court to suppose and act upon the supposition, that a want of observance of plain rules for answering is the result of inattention, or want of skill, or want of precision of language. It may proceed from an unwillingness to disclose the truth.

The motion is denied.